**James R. LEROY, Plaintiff,**

**and**

City of Coffeyville, Kansas, Insurance Company of North America and Aetna Insurance Company, Plaintiffs–Intervenors,

**v.**

**HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY, et al., Defendants.**

**Nancy LEMOS, et al., Plaintiffs,**

**and**

City of Coffeyville, Kansas, Insurance Company of North America and Aetna Insurance Company, Plaintiffs–Intervenors, & Cross–Claim Defendants,

**v.**

**HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY, et al., Defendants.**

**Janice LAY, et al., Plaintiffs,**

**and**

City of Coffeyville, Kansas, Insurance Company of North America and Aetna Insurance Company, Plaintiffs–Intervenors,

**v.**

**HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY, et al., Defendants.**

**Marci WILEY, et al., Plaintiffs,**

**and**

City of Coffeyville, Kansas, Insurance Company of North America and Aetna Insurance Company, Plaintiffs–Intervenors, & Cross–Claim Defendants,

**v.**

**HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY, et al., Defendants.**

Civ. A. Nos. 84–2121–S, 84–2240–S, 84–2312–S and 84–2213–S.

United States District Court, D. Kansas.

May 11, 1988.

As Corrected May 19, 1988.

Opinion on Motion for Reconsideration Aug. 15, 1988.

See also, 671 F.Supp. 23.

1122

Rene M. Netherton, Jerry K. Levy, Janet Jo Smith, Levy, Smith, Garrett & Smith, Topeka, Kan., for James R. Leroy.

Bruce Keplinger, Payne & Jones Chartered, Overland Park, Kan., F. Timothy McNamara, Hartford, Conn., Neal E. Millert, Larry J. Tyrl, James, Millert, Houdek, Tyrl & Sommers, Kansas City, Mo., Randolph G. Austin, Speer, Austin, Holliday & Ruddick, Olathe, Kan., for Hartford Steam Boiler Inspection and Ins. Co.

Edward M. Boddington, Jr., Frank C. Weidling, Boddington & Brown, Kansas City, Kan., William Jamieson, Dennenberg, Tuffley & Bocan, Southfield, Mich., for

Barksdale Valve Co., Transamerica Delaval, Inc.

Joseph A. Sherman, R. Michael Steele, Ronald Edelman, Sherman, Wickens, Lysaught & Speck, P.C., Kansas City, Mo., Cynthia L. Harmison, Sherman, Wickens, Lysaught & Speck, Overland Park, Kan., for plaintiff intervenor Ins. Co. of North America and Aetna Ins. Co.

Gary D. McCallister, Davis, Wright, Unrein, Hummer & McCallister, Topeka, Kan., Danna F. Brabender, Paul H. Niewald, Niewald, Waldeck, Norris & Brown, Kansas City, Mo., Michael G. Norris, Terry Fitzgerald, B. Scott Tschudy, Niewald, Waldeck, Norris & Brown, Overland Park, Kan., for plaintiff intervenors City of Coffeyville, Kan., Ins. Co. of North America and Aetna Ins. Co.

Garen L. Cox, Coffeyville, Kan., John R. Clarey, Linde, Thomson, Fairchild, Langworthy, Kohn & Van Dyke, Kansas City, Mo., for Nancy Lemos.

P. Gae Widdows, C. Gene Howard, Jackson M. Zanerhaft, Tulsa, Okl., Sheryl Bussell, Iola, Kan., William La Sorsa, La Sorsa, Weber & Miles, Tulsa, Okl., for Janice Lay.

Garen Cox, Coffeyville, Kan., John R. Cleary, Linde, Thomson, Fairchild, Langworthy, Kohn & Van Dyke, Kansas City, Mo., for Marci Wiley.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

Several matters are pending before the court in the above-captioned consolidated cases. Insurance Company of North America and Aetna Insurance Company ("INA/Aetna") has moved for summary judgment against the individual plaintiffs, Leroy, Lemos, Wiley, Lay, Frederick, and the Divelys. Hartford Steam Boiler Inspection and Insurance Company ("Hartford") has moved for summary judgment against plaintiffs-intervenors the City and INA/Aetna. The Benham Group, Inc. ("Benham") seeks summary judgment against plaintiffs-intervenors the City and INA/Aetna. INA/Aetna moves for a bifurcated trial. The City seeks to amend its complaint to add a cross-claim against INA/Aetna and to add a claim for punitive damages against Hartford. The City also appeals from a decision by the magistrate. Finally, individual plaintiffs Wiley, Lemos, Lay, Frederick and the Divelys move for a determination of their entitlement to attorney's fees and interest from the subrogated fund established through their settlement with Hartford, Combustion Engineering, Inc. ("Combustion") and Bailey Meter Company ("Bailey").

These consolidated cases arise out of a boiler explosion at the Coffeyville Municipal Power Plant in Coffeyville, Kansas, on August 5, 1983. Bradley Wiley, Richard Lemos, and Alfred W. "Dub" Lay were killed in the explosion, and plaintiffs James Leroy ("Leroy"), Larry Joe Frederick ("Frederick") and Richard Wayne Dively suffered serious injuries. Marci Wiley ("Wiley") and Nancy Lemos ("Lemos") bring this action individually and as administrices of their late husbands' estates; Lemos also brings this action on behalf of her minor children. Plaintiff Janice Lay ("Lay") brings this action as surviving spouse of Alfred W. "Dub" Lay and as next friend of her minor child. The surviving plaintiffs bring this action seeking recovery for their personal injuries, and plaintiff Lieta M. Dively brings this action as wife of plaintiff Richard Wayne Dively ("the Divelys"). The City of Coffeyville intervened in this action, along with its workers' compensation insurance carrier, INA/Aetna. The City and INA/Aetna seek recovery from Hartford and Benham, which allegedly contracted to inspect the boilers at the power plant. The individual plaintiffs seek recovery from INA/Aetna for negligent inspection. Additional claims among the parties and with Combustion and Bailey have been settled.

### I. INA/Aetna's Motion for Summary Judgment

The court will first address INA/Aetna's motion for summary judgment on the claims brought against it by the individual plaintiffs. The uncontroverted facts for purposes of this motion are as follows. INA/Aetna issued two insurance policies to

the City during the mid–1970's and those policies remained in effect through 1984. One policy covered property damage and liability claims, and the other provided workers' compensation coverage. Paragraph 9 of the "General Provisions" contained in the property damage/liability policy provided that:

> The company (INA/Aetna) shall be permitted but not obligated to inspect the Main Insured's (the City's) premises, automobiles and operations and to examine and audit the Insured's books and records at any time during the policy period and any extension thereof and within three years after the final termination of this policy, as far as they relate to the premium bases or the subject matter of this insurance. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the named insured or others, to determine or warrant that such property or operations are safe or healthful, or in compliance with any law, rule, or regulation.

Paragraph 4 of the "Conditions" contained in the workers' compensation insurance policy contained a similar provision.

Representatives of INA/Aetna visited the power plant at least four times during the 1970's and again in January, 1983. They conducted inspections of the plant, but the parties disagree as to the character and purpose of those inspections. Plaintiffs argue INA/Aetna had a duty to inspect. INA/Aetna argues that its representatives made no representations or recommendations regarding the safety of Boiler # 3 and had no duty to do so. In January, 1983, INA/Aetna representative Kelly McClelland ("McClelland") visited the plant and met with City Clerk Carolyn Ernzen ("Ernzen"). They discussed institution of a loss maintenance program, whereby INA/Aetna would provide inspections and other services so the City could improve safety and avoid losses. McClelland did not inspect the plant at that time, but promised to return for another visit in April, 1983. McClelland failed to visit in

April, 1983, and did not notify anyone with the City of his cancellation.

Plaintiffs contend that INA/Aetna was negligent in its failure to inspect and detect the defect in Boiler # 3 which caused the explosion. Since the insurance policies disclaim any duty to inspect, the parties agree that INA/Aetna may only be liable to plaintiffs by virtue of section 324A of the Second Restatement of Torts.

Section 324A provides that:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

This provision has been recognized by the Kansas Supreme Court. *See Schmeck v. City of Shawnee*, 232 Kan. 11, 26, 651 P.2d 585, 597 (1982).

INA/Aetna contends there is no evidence to establish it "undertook" to render inspection services to the City. It argues that in the insurance contracts it disclaimed any duty to inspect and any inspections conducted were for underwriting purposes only. It also contends that any promises made by McClelland in January, 1983, did not constitute an "undertaking." Even if those promises did constitute an "undertaking," INA/Aetna argues that McClelland's actions were performed pursuant to the workers' compensation insurance policy, and that INA/Aetna therefore has statutory immunity pursuant to the Kansas Workers' Compensation Act, K.S.A. 44–532.

INA/Aetna also contends that even if it did "undertake" to provide inspection services for the City, there is no evidence that it undertook to assume the City's duty to

provide a safe workplace, nor is there any evidence that the City relied upon INA/Aetna's inspections. The parties concede that there is no evidence to show INA/Aetna's actions in any way increased the risk of harm; *see* Restatement (Second) of Torts, § 324A(a).

■ A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). An issue of fact is "material" only when the dispute is over facts that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir. 1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). The language of Rule 56(a) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986).

■ Defendant invokes K.S.A. 44–532 as a defense to the charge that it was negligent in failing to follow up on the January, 1983 visit. Section 44–532 is part of the Kansas Workers Compensation Act, and provides in part:

(a) Where the payment of compensation of the employee or the employee's dependents is insured by a policy or policies, at the expense of the employer, or the employer is a member of a qualified group-funded workers' compensation pool, the insurer or the qualified group-funded workers' compensation pool shall be subrogated to the rights and duties under the workmen's [sic] compensation act of the employer so far as appropriate, including the immunities provided by K.S.A. 44–501 and amendments thereto.

K.S.A. 44–501 provides in part:

(b) Except as provided in the workers compensation act, no employer, or other employee of such employer, shall be liable for any injury for which compensation is recoverable under the workers compensation act, nor shall an employer be liable to any third party for any injury or death of an employee which was caused under circumstances creating a legal liability against a third party and for which workers compensation is payable by such employer.

It is uncontroverted that the January, 1983 visit by McClelland, upon which plaintiffs rely so heavily, was conducted pursuant to the City's workers' compensation coverage. The "Survey Report" completed by McClelland on that date is plainly captioned as a "Worker's Conpensation [sic] Report." Furthermore, McClelland states in his affidavit that his visit was conducted pursuant to the City's workers' compensation coverage. According to K.S.A. 44–532(a), INA/Aetna is therefore subrogated to the rights of the City in this personal injury action. K.S.A. 44–501(b) provides that the City is immune from suit for the death or personal injuries of the City's employees. Therefore, as subrogee, INA/Aetna is immune from suit for any action taken pursuant to its January, 1983, visit, and the plaintiffs' claims on this ground fail.

■ Plaintiffs also claim INA/Aetna negligently inspected Boiler #3 when their representatives inspected the City's facilities several times in the 1970's. Defendants concede that these visits were pursuant to the property damage/liability coverage, and therefore workers' compensation

immunity does not attach. The court must proceed through the section 324A analysis to determine whether liability for negligent inspection will be imposed.

The first step in determining liability is to ascertain whether INA/Aetna "under[took] . . . to render services to another." *See* Restatement (Second) of Torts, § 324A (1965). Several cases have addressed this language as it applies to insurance carriers that claim to have conducted inspections for their own purposes exclusively. The leading case on this issue is *Smith v. Allendale Mutual Ins. Co.,* 410 Mich. 685, 303 N.W.2d 702 (1981). The facts in that case are remarkably similar to those in the case at bar. In *Smith,* the cases of several individual plaintiffs were consolidated. Each had suffered injury as a result of a fire at the place of their employment. Defendant was the fire insurance carrier for the premises. The contract of insurance between defendant and the employer provided that defendant had a right but not an obligation to inspect the premises, and that neither the right to make inspections nor the making of any inspection report would constitute an "undertaking" for the benefit of the employer to warrant that the premises were safe.

During the time the insurance policy was in effect, defendant's representatives conducted several thorough inspections of the premises. Those representatives also consulted with the employer and alerted the employer to fire hazards. However, there was no evidence that defendant represented to the employer that the inspections were for the benefit of the employer or that such inspections relieved the employer of the responsibility of detecting fire hazards.

In a thorough, well-reasoned opinion, the court concluded that defendant was not liable to the plaintiffs under section 324A. The court noted that "where a plaintiff seeks to prove an undertaking by conduct which benefits another and that conduct is consistent with a primary purpose on the part of the actor to benefit himself, the plaintiff must offer additional evidence to create a jury question." *Smith,* 303 N.W.

2d at 712. The court then determined that defendant's actions were just as consistent with a primary purpose to benefit itself. "An inspection for fire hazards does not in itself represent that the insurer has done more than seek to reduce claims or determine whether it is willing to underwrite or remain on the risk." *Id.* The court noted that defendant never agreed or intended to inspect the premises for anything other than its own loss prevention and underwriting purposes, that defendant never represented that the inspections were provided as a benefit to the employer, and that the employer never indicated to the defendant that it was relying on those inspections. It also noted that defendant included a disclaimer on each inspection report given to the employer. In that disclaimer, they acknowledged that any recommendations given were not necessarily complete.

The court went on to examine some of the public policy considerations involved in deciding whether to impose section 324A liability on insurers who conduct inspections for their own loss reduction and underwriting purposes.

> Imposition of liability upon insurers who conduct inspections, without regard to whether they have agreed to provide inspections as a service to their insureds, might either drastically reduce inspections or raise premiums dramatically to meet the cost of more extensive inspection programs and judgments. If fire insurers were to become responsible to those on the premises should a jury decide that the injury was attributable to negligence in inspecting for fire hazards, the premium heretofore based on the risk of property damage must necessarily be substantially enlarged to reflect such public liability exposure.
>
> Imposing such liability would not improve the safety of the premises unless the insured acts on insurers' recommendations.

*Smith,* 303 N.W.2d at 721.

The court finds that the reasoning of the Michigan Supreme Court in *Smith* is sound; the Kansas Supreme Court would adopt the same reasoning, and the law stat-

ed in that opinion will be applied in the present case. Since there is no evidence that INA/Aetna undertook to inspect the City's facilities for any purpose other than for their own loss reduction and underwriting, the motion for summary judgment will be granted. The court would point out dicta in *Smith* which could have changed the outcome of today's decision had the facts been different here. In *Smith,* the court noted that if evidence showed the insurance carrier represented in its advertising or communications with its policyholders that it offered inspection services for the benefit of the employer as part of the policy, this might be sufficient to indicate an "undertaking" on the part of the insurer, and this first requirement of section 324A would be met. The court would then need to proceed to subparagraphs (a), (b), and (c) to determine whether section 324A liability should be imposed. In the present case, the plaintiffs charged in their memoranda that INA/Aetna had made representations while marketing their policy that inspection services were provided to the employer as part of a benefit of the policy. However, the court has found no evidence in the record of such representations. If such evidence exists, the court would be open to a motion for reconsideration. However, the court reserves all comment on whether it would find liability under subparagraphs (b) or (c) of section 324A. Without such evidence, however, the plaintiff-intervenor's motion for summary judgment will be granted.

II. INA/Aetna's Motion for Bifurcated Trial

INA/Aetna asks for separate trials for the personal injury and property damage claims, or separate trials for the liability and damage stages of the personal injury claims. Since the court will grant summary judgment on the personal injury claims against INA/Aetna, this motion will be denied as moot.

III. City's Motion to Amend Claim Against INA/Aetna

The City has asked for leave to amend to add claims for negligence and breach of contract against INA/Aetna. It has advised the court that its additional claims against Combustion and Bailey proposed in its fourth amended complaint have been settled, and therefore do not need to be addressed.

■ The City's negligence claim against INA/Aetna is contingent upon the existence of a claim against INA/Aetna for negligent inspection on behalf of the individual plaintiffs. Since the court will dismiss the individual plaintiffs' negligent inspection claims in today's Memorandum and Order, the motion to amend to add a claim of negligence against INA/Aetna will be denied as moot. As for the request to amend to add a breach of contract claim against INA/Aetna, the motion will be denied. Rule 15(a) of the Federal Rules of Civil Procedure governs the amendment of pleadings. That rule provides in part that "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." In *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), the United States Supreme Court indicated that a motion to amend should be denied only if it is untimely, or would be prejudicial or futile. *Id.* at 182, 83 S.Ct. at 230; *see also Childers v. Independent School Dist. No. 1,* 676 F.2d 1338, 1343 (10th Cir.1982). The decision to grant a motion to amend is within the sound discretion of the court. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971).

The City has not offered the court any legitimate reason why this amendment has not been proposed until now. Discovery has closed and the case has been set for trial in September, 1988. The court does not agree that further discovery would not be required; while INA/Aetna has been involved in this litigation from the beginning, the court has no information from which it could conclude that INA/Aetna has been preparing to defend a breach of contract claim from the start. The City's proposed amendment is untimely and would be prejudicial to INA/Aetna, and the motion will therefore be denied.

## 1128

### IV. City and INA/Aetna's Motion to Set Aside Magistrate's Order

■ On December 18, 1987, Magistrate Gerald Rushfelt issued an order which in part denied plaintiffs-intervenors' motion for leave to amend their designation of experts to add expert witness Donald E. Sharp. Plaintiffs-intervenors seek to add Sharp to their list of experts so he may give an opinion regarding the value of Boiler # 3 immediately prior to the explosion. Plaintiffs-intervenors claim that they have not offered his opinion regarding the value of Boiler # 3 before now because they were unaware defendant Hartford would contend that the cost of repair and/or replacement would not be the accurate measure of damages. Hartford now argues that discovery has closed, and to allow plaintiffs-intervenors to add Sharp at this late stage would be unduly prejudicial and untimely; Hartford would have to re-depose him and then perhaps designate their own expert on that issue, and plaintiffs-intervenors would then need to depose that expert.

The district court's scope of review of a magistrate's determination under 28 U.S.C. § 636(b)(1)(A) is whether the order has been shown to be "clearly erroneous or contrary to law." The standard of review of non-dispositive motions was approved by the United States Supreme Court in *United States v. Raddatz*, 447 U.S. 667, 673, 100 S.Ct. 2406, 2411, 65 L.Ed.2d 424 (1980). The corresponding Local Rule 604(a) similarly states that the court shall consider an appeal from the magistrate's order and shall accept the magistrate's findings of fact unless they are clearly erroneous. *See also* Fed.R.Civ.P. 72(a).

The court finds that the magistrate's order was not clearly erroneous. Plaintiffs-intervenors' request to amend was made late in this litigation, and it was within the magistrate's discretion to deny the request. The motion will therefore be denied.

### V. Plaintiffs Lay, Frederick, Lemos, Wiley, and the Divelys' Motion for Determination of Entitlement to Interest and Attorneys' Fees from the Subrogated Fund

Plaintiffs Lay, Frederick, Lemos, Wiley, and the Divelys have settled with Hartford, Combustion, and Bailey. At a settlement hearing on June 22, 1987, the parties agreed to have certain portions of the settlement amount deposited with the court. Those amounts accounted for the subrogation liens claimed by plaintiff-intervenor INA/Aetna, along with interest and attorneys' fees. The parties agree that under K.S.A. 44–504, INA/Aetna has a right of subrogation against that portion of the settlement equal to any amounts it paid the plaintiffs in workers' compensation benefits. However, the parties disagree as to whether INA/Aetna is also entitled to interest on those benefits accruing from the time they were first paid. The parties also dispute whether plaintiffs' attorneys are entitled to forty percent of the subrogated amount as attorneys' fees; both Lemos and Wiley, and Lay, Frederick and the Divelys have contingency fee contracts with their attorneys allowing them a fee of forty percent of any recovery. Finally, both the plaintiffs and plaintiff-intervenor are seeking all interest which has accrued on the claimed amount since its deposit with the court.

■ INA/Aetna bases its claim to pre-recovery, pre-deposit interest on its assertion that such amounts were liquidated from the time they were paid from INA/Aetna to plaintiffs. However, this is not the relevant inquiry; we must examine whether the amounts due INA/Aetna were liquidated. Plaintiffs are correct in pointing out that such amounts were not liquidated until settlements with Hartford, Combustion, and Bailey were reached, because until that time INA/Aetna had no right to receive those amounts from plaintiffs. Only upon recovery from defendants did INA/Aetna become entitled to the amounts in question. *See* K.S.A. 44–504(b) ("*In the event of recovery* from such other person by the injured worker or the dependents or personal representatives of a deceased worker by judgment, settlement or otherwise, the employer ... shall have a lien therefor against such recovery....") (emphasis added). Plaintiff-intervenor is not

entitled to any pre-recovery interest, and the court shall order the clerk to pay this interest to plaintiffs, along with interest which has accrued since the date of deposit with the court.

As for plaintiffs' claim to a percentage of the subrogated fund as attorneys' fees, the court refers to its Memorandum and Order in this case dated June 30, 1987, and adopts the reasoning in that decision. Like counsel for plaintiff Leroy, counsel for plaintiffs Lay, Frederick, and the Divelys should receive fifteen percent of the amount recovered, or $81,745.48. However, the court notes the lead effort taken by counsel for plaintiffs Lemos and Wiley in conducting this litigation for the the benefit of all plaintiffs. The court therefore determines that Lemos and Wiley's contingency contract should be honored, and the firm of Linde, Thomson, Fairchild, Langworth, Kohn & Van Dyke, P.C., and Garen L. Cox should receive forty percent of the subrogated amount, or $43,820.63. All interest accrued on these amounts since the time of deposit with the court should also be paid to plaintiffs.

## VI. Benham's Motion for Summary Judgment

■ Defendant Benham has moved for summary judgment against plaintiffs-intervenors the City and INA/Aetna on their breach of contract and negligent inspection claims. The uncontroverted facts for purposes of this motion are as follows. Benham was retained by the City in 1982 to conduct a survey of the City's facilities, including the power plant and Boiler # 3. Benham characterizes these surveys as "efficiency" surveys; the City sought recommendations from Benham concerning methods by which they could operate their facilities more efficiently. The parties signed a contract whereby Benham would provide consulting services to the City as requested from time to time through separate work orders. In May, 1982, the City approved a work order which would provide for the inspection of the power plant and boilers. That inspection was conducted shortly afterward, and the inspector prepared a written report. That report included various

recommendations for safety and efficiency improvements. The inspector did not detect or report any of the defects in Boiler # 3 which are claimed to have caused the August, 1983, explosion.

The court has previously set out the standards applicable to motions for summary judgment. After thoroughly reviewing the memoranda submitted by the parties, the court has determined that defendant Benham makes essentially four arguments in support of its motion. These are: 1) the work order establishing Benham's duty to inspect the power plant and Boiler # 3 was completed and delivered according to the terms of the contract, and the City's exclusive remedy under that contract is to demand corrective services within one (1) year of performance; 2) the City had knowledge of each of the defects allegedly causing the explosion, while defendant Benham could not be expected to find those defendants in light of the scope of and restrictions surrounding its inspection; 3) Benham's inspector was not obligated to inspect for safety hazards, but only to make recommendations for plant efficiency; and 4) the opinion of the City's expert witness regarding the inspector's actions lacks foundation. The court will address each of these arguments accordingly.

Benham's first argument is that the work order was completed and delivered; Benham's inspector conducted the inspection and delivered to the City his recommendations. Therefore, Benham complied with all the terms of the contract, and no liability should lie with Benham. Defendant also argues that under the contract, the City's exclusive remedy was to request corrective services with one year of performance, and since the City did not ask Benham to reinspect within one year of May, 1982, it is barred from recovery. This argument is wholly specious for two reasons. First, it begs the question to argue that the contract was completed and liability should therefore not be imposed. The crux of the City's case is that Benham did not perform its duties under the contract reasonably and with due care. Secondly, it defies logic to argue that the one-year provision in the

contract should apply to Benham's failure to discovery defects. The City retained Benham to inspect the facilities because it lacked the expertise itself, so the City could not be expected to discover that Benham failed in its contractual duties until they received some indication that a defect existed and Benham failed to detect it. This indication did not come until the boiler exploded in August, 1983.

Benham next argues that it cannot be held liable because the City knew of the defects which caused the explosion, or would have discovered those defects had they followed the recommendations of Benham's inspector. Therefore, any failure on Benham's part to discover those defects could not be the cause of the explosion. Benham is essentially arguing that the City was contributorily negligent. Not only does this argument present a question purely of fact, but even if Benham were eventually found to be correct, the City's contributory negligence would not completely absolve Benham of liability. *See* K.S.A. 60–258a. Furthermore, Benham's argument that it could not have been expected to detect the defects in question also presents an issue of fact; the evidence presented by the parties is conflicting concerning whether the scope of Benham's inspection would have allowed its inspector to find the defects in question. Summary judgment on this point would be inappropriate.

Benham next argues that the purpose of the inspection was to improve plant efficiency, and not to detect safety hazards. Summary judgment will be denied on this point as well. The nature of the inspector's recommendations seems to indicate that he was at least partially concerned with improving plant safety; he made several recommendations which would improve safety procedures. Additionally, the court cannot conclude at this point that an efficiency evaluation would not include a safety evaluation. The court doubts that an unsafe plant would be considered "efficient."

Finally, defendant contends that summary judgment is appropriate because the City's expert who evaluated the actions of Benham lacked a proper foundation for his opinion. The court can dispose of this argument summarily. Matters such as this are entirely inappropriate to support a motion for summary judgment. Only a jury can evaluate the qualifications of an expert and the facts upon which that expert bases an opinion, and determine whether the opinion is credible. Summary judgment will be denied on this point as well.

Having failed to support its motion with any of its four arguments, defendant Benham's motion for summary judgment will be denied.

VII. Hartford's Motion for Summary Judgment

The court will next address the motion for summary judgment filed by defendant Hartford. Hartford seeks summary judgment on the claims against it brought by the City and INA/Aetna. The City and INA/Aetna seek recovery on the basis of both contract and tort.

The uncontroverted facts for purposes of this motion are as follows. Prior to August, 1983, Hartford entered into a contract with the City. Pursuant to that contract, Hartford agreed to provide annual inspections as required by the Kansas Boiler Safety Act, K.S.A. 44–914 *et seq*. The contract also provided that Hartford be permitted but not required to conduct other inspections for its own underwriting purposes. Plaintiffs-intervenors now argue that defendant failed to perform the state certification inspection properly because it failed to discover the defect which allegedly caused the explosion.

Defendant makes three arguments in support of its motion for summary judgment. It first argues that its inspector was acting in the capacity of a state employee when he conducted the state inspections; therefore, only the State may be held liable for his alleged negligence. Secondly, defendant argues that even if its inspector was acting in his capacity as an employee of Hartford, he had no duty under the Kansas Boiler Safety Act and its regulations to inspect that portion of the

boiler which allegedly caused the explosion. Finally, Hartford argues that it cannot be liable in tort or contract because it had no duty under the contract to inspect that portion of the boiler which caused the explosion, and the City was not justified in relying on those inspections.

■ The court has already set out the standards governing a motion for summary judgment. It will therefore proceed to address each of defendant's arguments. Defendant first asserts that its inspector was acting in the sole capacity of a state employee when he conducted the inspection necessary for state certification. *See* K.S. A. 44–920. This argument is without merit. Defendant was obligated by contract to provide state inspection services to the City. When Hartford's representative conducted the state certification inspection, he not only was acting on behalf of the state, but he was performing Hartford's obligation under the contract. Without the inspector's action, Hartford would have breached its contract with the City. The cases cited by defendant are inapposite. *Bonewell v. City of Derby*, 236 Kan. 589, 693 P.2d 1179 (1985), addressed the status of the Derby Jaycees, Inc. during the time in which they managed softball games conducted in a city-owned park. The supreme court pointed out that the City of Derby retained actual control over the field; the Jaycees simply assisted the City "in carrying out the public purposes for which [the field] was built and maintained." 236 Kan. at 593, 693 P.2d at 1182. The Jaycees were not obligated to provide these services under a contract with the plaintiff or anyone else. Likewise, the defendant in *Ruddy v. United States Fidelity & Guaranty Ins. Co.*, 288 F.Supp. 315 (M.D.Pa.1968), was not obligated under contract to provide inspection services to the plaintiff, and in *Barbaria v. Independent Elevator Co.*, 139 Cal.App.2d 474, 293 P.2d 855 (1956), the defendant had no right to exercise control over the state inspector's actions. An extended discussion of the other cases cited by defendant would only belabor the point. Defendant may not escape liability simply because its inspector was acting in a dual capacity. The court must therefore examine defendant's argument that under Kansas law, the inspector had no duty to inspect that part of Boiler # 3 which allegedly caused the explosion.

■ A brief elementary explanation of the various boiler components is necessary at this point. Boiler # 3 may be divided into two parts: the "fire side" and the "water side." The "fire side" consists of the furnace and its safety and other devices, which burns oil or gas in order to heat the water on the "water side." On the "water side," water is contained in a boiler vessel. The furnace heats this water, generating steam which drives the turbines in the power plant and creates electricity. The parties agree that there is no evidence to indicate any defect on the "water side" caused the explosion. Instead, the focus of the various investigations has been on the "fire side," where at least some experts in this case believe a defective forced draft fan and its fan motor allowed gas to accumulate and cause an explosion when plaintiffs attempted to relight a pilot on the furnace.

Hartford claims that under the requirements of the Kansas Boiler Safety Act and its regulations, it was only obligated to inspect and certify the "water side." It had no duty to inspect the "fire side," no duty to detect the defective forced draft fan and fan motor, and therefore it should not be liable for failing to do so.

The Kansas Boiler Safety Act requires that all boilers operating within the State of Kansas, including the boilers at the Coffeyville power plant, be inspected and certified annually. *See* K.S.A. 44–923(c). The Act authorizes the secretary to adopt rules and regulations regarding the inspection and certification of boilers in the State. K.S.A. 44–916(c). Those rules and regulations are found in Article 45, Chapter 49 of the Kansas Administrative Regulations. Those regulations adopt the definitions developed by the American Society of Mechanical Engineers (A.S.M.E.), K.A.R. 49–45–1, and the National Inspection Board Code published by the National Board of Boiler and Pressure Vessel Inspectors,

K.A.R. 49–45–20. Defendant argues that the A.S.M.E. definitions distinguish between a "boiler", which includes only the boiler vessel and its apparatus, and a "boiler unit" or "boiler system," which includes the vessel, its apparatus, the furnace, the furnace safety devices, etc. Hartford points out that since "boiler" is defined as including only the equipment on the "water side", and since the Kansas Boiler Safety Act requires inspection of "boilers" but makes no provision for inspection of "boiler systems" or "boiler units," the state certification inspection it performed only required an inspection of the "water side" of Boiler # 3. It had no duty to inspect or discover any defects on the "fire side," and cannot be held liable for any damage caused by such defects.

Hartford further argues that the National Board Inspection Code, adopted by K.A.R. 49–45–20, only speaks to inspections of boiler vessels and related apparatus. It does not speak to inspections of accompanying furnaces or their safety devices. Hartford also cites the sample inspection forms provided with the National Board Inspection Code book, which make no mention of furnace inspections.

However, a further examination of the Boiler Safety Act regulations indicate that the Kansas legislature and the secretary did intend to require inspections of the "fire side" of Boiler # 3. Within Article 45 of the regulations, which is entitled "Boiler Specifications and Inspections," the secretary makes reference not only to the A.S.M.E. definitions and the National Board Inspection Code, but also to the National Fire Code of the National Fire Protection Association (N.F.P.A.). *See* K.A.R. 49–45–21 through 24. K.A.R. 49–45–22 and 23 are entitled "Prevention of furnace explosions in natural gas-fired multiple burner boiler-furnaces" and "Prevention of furnace explosions in fuel oil-fired multiple burner boiler-furnaces." Those provisions adopt sections 85–B–1978 of Volume 8 of the National Fire Codes. Both provisions are authorized by and implement K.S.A. 44–916, the statute authorizing the secretary to adopt regulations for safe construc-

tion, installation, inspection, maintenance and repair of boilers in the state.

The only logical conclusion the court may draw from the fact that these provisions of the National Fire Codes have been adopted by the secretary under authorization from the Kansas legislature is that Boiler # 3 was required to comply with those fire codes. The only way to ensure that it complied with those codes was to require state inspectors to examine it on a regular basis. The court is provided with further evidence that the secretary intended inspectors to examine Boiler # 3's furnace in that the adoption of the fire codes was included under Article 45, entitled "Boiler Specifications *and Inspections*" (emphasis added). The court is also persuaded in large part by the fact that in passing the Kansas Boiler Safety Act and in promulgating the regulations under that Act, the Kansas legislature and the secretary intended to protect the public's safety. Boilers are highly dangerous instrumentalities, with a potential for causing death or severe injury to unsuspecting members of the public. It would be senseless to require inspections of only a part of that instrumentality, while leaving the highly volatile furnace and its safety devices unchecked. The court has no choice but to find that Hartford's inspector was required to examine the furnace and the accompanying safety devices of Boiler # 3 in the course of his state certification inspection. Summary judgment would therefore be inappropriate. This conclusion makes it unnecessary for the court to address defendant's argument that the voluntary inspection, which was conducted beyond the alleged scope of the Boiler Safety Act, did not give rise to a duty under contract or tort law.

## VIII. City and INA/Aetna's Motion to Amend Claim Against Hartford

■ Finally, the court will address plaintiffs-intervenors' motion to amend its complaint against Hartford to include a claim for punitive damages. The City seeks to add a claim for punitive damages in light of information it has that defendant Hartford's inspector allegedly falsified a state inspection report; it claims he sub-

mitted a report stating he had completed an inspection, when in fact he had not done so. The City submits that such conduct constitutes reckless indifference for the rights of the City, and that in such circumstances, Kansas law allows an award of punitive damages. *See, e.g., Tetuan v. A.H. Robins Co.*, 241 Kan. 441, 738 P.2d 1210 (1987); *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, 681 P.2d 1038 (1984). Hartford contends that such an amendment would be untimely; it also alleges that the inspector's failure to make an inspection had no causal relationship to the August, 1983, explosion, and that any claim for punitive damages is barred by the statute of limitations.

Plaintiff-intervenor originally scheduled the inspector's deposition for July 8–13, 1985. However, the inspector, Jack Barber ("Barber"), invoked his fifth amendment privilege against self-incrimination when questioned at his deposition about his alleged submission of a false inspection report. On July 31, 1985, the City sought leave to amend its complaint to include a claim for misrepresentation against Hartford. On December 16, 1985, the City filed a motion to compel full and complete answers to all questions posed to Barber at his deposition. The City also propounded interrogatories to Hartford regarding the question of whether Barber had conducted the inspection in question. Those interrogatories were answered on January 3, 1986, and in them Hartford indicated that Barber had not conducted the inspection as he had represented in his report. Finally, on May 14, 1987, Barber's deposition continued, and he disclosed that he did not conduct the inspection.

The court discussed earlier the standards governing a motion to amend. The court is convinced that an amendment adding a claim for punitive damages would be prejudicial to defendant at this stage, because of the additional discovery that would be required at this late date. Discovery closed on August 31, 1987, and the trial is now set for September, 1988. Furthermore, the City has not satisfied the court that this amendment was proposed without undue delay. Although it was not able to explore in detail Barber's reasons for failing to conduct the inspection and for filing a false report, the City was aware when it received answers to interrogatories on January 3, 1986, that Barber had not performed the inspection and that a false report was indeed filed. This was nearly two years before the City proposed its amendment. The court has no problem concluding that the facts before it present a clear case for a denial of a motion to amend on the grounds of prejudice and undue delay.

IT IS BY THE COURT THEREFORE ORDERED that plaintiff-intervenor Insurance Company of North America and Aetna Insurance Company's motion for summary judgment in its favor on the claims of plaintiffs Leroy, Lemos, Wiley, Lay, Frederick, and the Divelys is granted. IT IS FURTHER ORDERED that plaintiff-intervenor Insurance Company of North America and Aetna Insurance Company's motion for bifurcated trial is denied. IT IS FURTHER ORDERED that the City of Coffeyville's motion for leave to amend is denied. IT IS FURTHER ORDERED that plaintiffs-intervenors the City of Coffeyville and Insurance Company of North America and Aetna Insurance Company's motion to set aside the magistrate's order is denied. IT IS FURTHER ORDERED that plaintiffs Lay, Frederick, Lemos, Wiley, and the Divelys' motions for determination of entitlement to interest and attorneys' fees are granted. The clerk of the court is hereby ordered to pay out of the fund deposited with the court the following amounts. Plaintiffs Wiley and Lemos are to receive a total of $24,922.11 in pre-recovery interest, $43,820.63 in attorneys' fees, and all interest accrued on the total amount of $68,742.74 since the date of deposit with the court. Plaintiffs Lay, Frederick, and the Divelys are to receive a total of $159,830.43 in pre-recovery interest, $81,745.48 in attorneys' fees, and all interest accrued on the total amount of $241,575.91 since the date of deposit with the court. Plaintiff-intervenor Insurance Company of North America and Aetna Insurance Company is to receive the balance of the fund deposited with the court, including all interest ac-

crued since the date of deposit with the court. IT IS FURTHER ORDERED that defendant The Benham Group, Inc.'s motion for summary judgment is denied. IT IS FURTHER ORDERED that defendant Hartford Steam Boiler Inspection and Insurance Company's motion for summary judgment is denied. IT IS FURTHER ORDERED that plaintiff-intervenor the City of Coffeyville's motion to amend is denied.

## ON MOTION FOR RECONSIDERATION

This matter is before the court on plaintiffs Nancy Lemos ("Lemos") and Marci Wiley's ("Wiley") motion for reconsideration of this Court's Memorandum and Order dated May 11, 1988. In that Memorandum and Order, this court granted plaintiff-intervenor Insurance Company of North America and Aetna Insurance Company's ("INA/Aetna") motion for summary judgment. Also pending before the court is a motion to clarify that Memorandum and Order, filed by plaintiffs Janice Lay, Larry Frederick, and Richard and Leita Diveley, a motion to amend that Memorandum and Order, filed by plaintiff James R. Leroy, and a Motion to Pay Out, filed by INA/Aetna. The court will address each of these motions accordingly.

This case arose out of the explosion of a boiler at the Coffeyville Power Plant in Coffeyville, Kansas. Plaintiffs brought these actions seeking damages for the personal injuries and/or deaths suffered by six city employees in the explosion. INA/Aetna was the City of Coffeyville's ("City") workers' compensation and general liability insurer. Plaintiffs sued INA/Aetna for its alleged negligent inspections of the boiler involved in the explosion, and liability was premised on section 324A of the Second Restatement of Torts. In its May 11, 1988, Memorandum and Order, this court granted INA/Aetna's motion for summary judgment, partially on the grounds that it was immune from liability as the City's workers' compensation carrier. *See* K.S.A. 44–532(a) and 44–501(b). The court also held that during any inspections INA/Aetna conducted before it became the City's workers' compensation carrier, INA/Aetna had not undertaken to perform those inspections for the City's benefit, and therefore the first requirement of section 324A had not been met.

Plaintiffs now contend that the evidence indicated a question of fact as to whether INA/Aetna was also acting in its capacity as liability carrier during the crucial January, 1983 visit to the City. It was this visit for which the court ruled INA/Aetna was immune under K.S.A. 44–532(a) and 44–501(b). Plaintiffs also argue that K.S.A. 44–532(a) is unconstitutional.

Plaintiffs try to demonstrate that the January, 1983 visit was conducted pursuant to the general liability coverage by pointing to letters exchanged among INA/Aetna officials after the visit; those letters reference the general liability policy as well as the workers' compensation policy. They also point out that the inspection report completed after that visit was sent to an office in charge of general liability policies. Plaintiffs contend that this evidence at least raises an issue of fact as to whether the visit in question was conducted pursuant to the general liability policy. They do not attempt to controvert the fact that at least some of the documents generated from that visit reference the workers' compensation policy, and they concede that that visit was conducted at least partially pursuant to the workers' compensation policy.

The court is not convinced that a few general references to all INA/Aetna policies held by the City, including the general liability policy, provides any probative evidence that INA/Aetna's representative visited the City in any capacity other than that which he stated by affidavit and which is shown on his inspection report: an inspector under the workers' compensation policy. However, if the January, 1983 visit was conducted pursuant to both policies, the only way liability can be imposed is through application of the "dual capacity" doctrine.

■ The "dual capacity" doctrine has been recognized in Kansas. *See Kimzey v. Interpace Corp., Inc.*, 10 Kan.App.2d 165, 694 P.2d 907 (1985); *see also Quigley v.*

*General Motors Corp.*, 660 F.Supp. 499 (D.Kan.1987). That doctrine provides that an employer may be held liable to an employee injured on the job, despite workers' compensation coverage, if the employer is acting in a capacity unrelated to its role as employer at the time the employee is injured. Pursuant to the insurer's subrogation provision at K.S.A. 44–532(a), INA/Aetna would be immune from suit unless it was acting in a capacity wholly unrelated to its status as workers' compensation carrier at the time the alleged negligent inspection took place.

If INA/Aetna had been acting solely in its capacity as general liability carrier for the City at the time of its January, 1983 visit, the court would have no trouble determining that the "dual capacity" doctrine applied here, and that INA/Aetna should not enjoy immunity. *See Sims v. American Casualty Co.*, 131 Ga.App. 461, 206 S.E.2d 121, *aff'd sub nom., Providence Washington Ins. Co. v. Sims*, 232 Ga. 787, 209 S.E.2d 61 (1974) (workers' compensation insurer is not cloaked with immunity unless it is acting in its capacity as workers' compensation insurer). But at most, INA/Aetna conducted its January, 1983 visit in its role as both the workers' compensation and general liability carrier for the City. The court must therefore determine whether immunity should apply when an insurance carrier acts simultaneously in two capacities.

A case from the United States District Court in Rhode Island is directly on point to this inquiry. In the case *Latour v. Commercial Union Ins. Co.*, 528 F.Supp. 231 (D.R.I.1981), an injured employee and the widows of two deceased employees sought recovery from the employer's general liability and workers' compensation carrier on a theory of negligent inspection. The insurance carrier claimed immunity as the workers' compensation carrier. The court first determined that an employer's immunity should not extend to all entities who assist the employer in maintaining a safe workplace. Instead, immunity should extend only to an entity acting in its capacity as the employer's workers' compensation carrier. *Id.* at 234. After a review of the limited case law on the subject, the court held that an insurer acting in the dual capacity of general liability carrier and workers' compensation carrier should be immune "to the extent that the roles of compensation carrier and liability insurer are indeed 'intertwined.'" *Id.* at 235 (quoting *Kerner v. Employers Mutual Liability Ins. Co.*, 35 Wis.2d 391, 151 N.W.2d 72, 77 (1967)). The plaintiff would have the burden of proof in showing that the alleged negligent inspection was wholly unrelated to the insurer's status as compensation carrier. *Id.*

Plaintiffs here cannot meet that burden. They concede that INA/Aetna was acting at least partially in its capacity as the City's workers' compensation carrier. Plaintiffs point to several documents generated by INA/Aetna after the January, 1983 visit which reference the general liability policy numbers. However, each of those documents also reference the workers' compensation policy. The report which INA/Aetna's representative completed after his visit to the City is captioned "Worker's Conpensation [sic] Report." Plaintiffs show the court no facts which would controvert the plain evidence indicating that the January, 1983 visit was intended at least in part to be pursuant to the compensation coverage. Since no issue of fact exists, summary judgment was appropriate and the motion for reconsideration will be denied.

■ Furthermore, the court rejects plaintiffs' argument that K.S.A. 44–532(a) is unconstitutional. Plaintiffs contend that this provision violates the equal protection clause of the Kansas Constitution by creating a limited class of tortfeasors who are not subject to the same liability as all other defendants in tort litigation. Plaintiffs also contend the provision violates section 18 of the Kansas Bill of Rights by denying relief to a limited class of plaintiffs. However, plaintiffs fail to acknowledge that the Kansas Supreme Court has already upheld workers' compensation immunity in the face of constitutional challenges. *See Rajala v. Doresky*, 233 Kan. 440, 442, 661 P.2d 1251, 1253 (1983) (co-employee immu-

nity does not violate section 18 of Kansas Bill of Rights). In support of their equal protection challenge, plaintiffs spend less than one paragraph arguing their position, which basically amounts to an assertion that K.S.A. 44–532(a) is unconstitutional for the same reasons that the Kansas legislature's abrogation of the collateral source rule was declared unconstitutional in *Farley v. Engelken*, 241 Kan. 663, 740 P.2d 1058 (1987). The two statutory provisions are substantially dissimilar, and the court is unable to determine that K.S.A. 44–532(a) is unconstitutional solely on the basis of a reference to *Farley v. Engelken*. The argument is rejected, and the motion for reconsideration will be denied to the extent it challenges this court's determination on the workers' compensation immunity issue.

The plaintiffs also contend that this court erred in finding that when INA/Aetna conducted a series of inspections before it became the workers' compensation carrier, it did not undertake to perform those inspections for the benefit of the City, and therefore could not be liable under section 324A of the Second Restatement of Torts. Plaintiffs point to several pieces of evidence which they claim indicates that the internal policy of INA/Aetna was to conduct inspections with an eye toward assisting the insured with loss control. The court has reviewed that evidence, and finds it unpersuasive. Chuck Hammond, an INA/Aetna Loss Control Specialist, indicated in his deposition testimony only that inspections were conducted in order to "reduce losses." Nowhere does he indicate that this loss reduction was sought for anyone's benefit other than the insurer's. In his first deposition, Wayne Hamlin ("Hamlin"), INA/Aetna's Manager of Property Specialists, indicated that inspections are conducted so that a report may be made to the underwriters; he also indicates that the inspectors may then make recommendations to the insured on methods to reduce risks, but nowhere does he indicate that this is intended to do anything but reduce INA/Aetna's losses. The Special Risk Property Manual offered as an exhibit in Hamlin's deposition is of no probative value

in this case because it was printed in 1981, long after the series of inspections upon which this portion of the case is based. In his second deposition, Hamlin indicates that after the inspection, the inspector would normally, "out of courtesy", alert the insured to any unsafe conditions discovered, but it does not follow that the inspection itself is conducted with the intent to benefit anyone other than INA/Aetna. Plaintiffs refer to deposition testimony from Robert Kelly ("Kelly"), an INA/Aetna underwriter, but that testimony (pp. 178–79) only indicates an intent to assist the City in loss control once they decided around 1982 to add workers' compensation coverage to the already-existing general liability coverage. Finally, Kelly's deposition testimony at pp. 131–132 indicates that INA/Aetna wanted to eliminate unsafe conditions in the City's facilities for underwriting purposes; no other purpose is indicated. Therefore, there is no evidence that INA/Aetna agreed or intended to provide loss control services to the City for the City's benefit.

Furthermore, the court has reviewed plaintiff's arguments in opposition to the court's adoption of the rule stated in *Smith v. Allendale Mutual Ins. Co.*, 410 Mich. 685, 303 N.W.2d 702 (1981), and finds those arguments to be unpersuasive. The case has been cited approvingly by several other courts since it was first decided, and the court finds its reasoning to be persuasive. Therefore, to the extent plaintiffs seek reconsideration of this court's determination of the section 324A issue, the motion to reconsider will be denied.

■ Finally, plaintiffs Lemos and Wiley seek reconsideration of the portion of this Court's May 11, 1988, Memorandum and Order which awarded INA/Aetna the balance of a subrogation fund established after all plaintiffs settled with three former defendants. Plaintiffs Janice Lay, Larry Frederick, and Richard and Leita Diveley's motion to clarify addresses the same concern. They point out that K.S.A. 44–504(d) provides that an employer's (or its insurance carrier's) right to a subrogation fund shall be diminished by the percentage of fault attributed to the employer. While the

court acknowledges that this statutory provision should normally affect INA/Aetna's right to recover the subrogation fund, any effort to apply that provision in this case is defeated by the fact that there will not be a trial of this case. All claims have settled or have been disposed of by summary judgment. Since no determination of the City's fault will be made, the court cannot reduce INA/Aetna's entitlement to the subrogation fund accordingly. The motion to clarify and the motion to reconsider will therefore be denied. However, if the parties are aware of any provision in the Kansas Workers' Compensation Act or of any other device by which K.S.A. 44–504(d) may be applied here, they should file such suggestions within ten (10) days from the date of this Memorandum and Order. If the parties fail to file anything within that time, the court shall grant INA/Aetna's motion to pay out the full balance of the subrogation fund.

The only matter remaining in this four-year, protracted multi-party lawsuit then is a simple motion to amend filed by plaintiff James R. Leroy. This plaintiff asks the court to amend its May 11, 1988, Memorandum and Order to provide for his recovery of pre-recovery interest, as allowed the other plaintiffs; *see* Memorandum and Order, *James R. Leroy (No. 84–2121–S), Janice Lay, et al. (No. 84–2312–S), Marci Wiley, et al. (No. 84–2313–S), Nancy Diane Lemos, et al. (No. 84–2240–S) v. The Hartford Steam Boiler Inspection & Insurance Co., et al.,* 695 F.Supp. 1120, at 1128 (D.Kan.1988). INA/Aetna opposes the motion on the grounds that it is untimely. The court disagrees. Not until this court entered its Memorandum and Order on May 11, 1988, did it determine that plaintiffs should be entitled to pre-recovery interest. While a motion from plaintiff Leroy was not pending before the court at that time, the court had not determined the issue as to the other plaintiffs until that time. The request is timely, and the court shall order that plaintiff Leroy receive from the subrogation fund the amount of $9,341.03, plus interest accrued since the date of deposit.

IT IS BY THE COURT THEREFORE ORDERED that plaintiffs Lemos and Wiley's motion to reconsider is denied. IT IS FURTHER ORDERED that plaintiffs Lay, Frederick, and the Diveleys' motion to clarify is denied. IT IS FURTHER ORDERED that plaintiff Leroy's motion to amend is granted. The clerk is hereby ordered to pay to plaintiff Leroy the amount of $9,341.03, plus interest accrued since the date of deposit. IT IS FURTHER ORDERED that the court shall delay ruling on plaintiff-intervenor Insurance Company of North America and Aetna Insurance Company's motion to pay out until ten (10) days from the date of this Memorandum and Order, or until such other time as the court shall deem appropriate.