(206 P.3d 558)
No. 99,648

BOARD OF COUNTY COMMISSIONERS OF GRAHAM COUNTY, KANSAS, *Appellee*, v. KANSAS DEPARTMENT OF LABOR, *Appellant*.

Opinion filed May 8, 2009.

*Darren E. Root* and *A.J. Kotich*, of Kansas Department of Labor, for appellant.

*Tony A. Potter*, county attorney, for appellee.

Before BUSER, P.J., ELLIOTT and GREEN, JJ.

ELLIOTT, J.: The Kansas Department of Labor (KDL) appeals the trial court's ruling that the heating unit in the Graham County Courthouse was not subject to state regulation under the Kansas Boiler Safety Act (KBSA), K.S.A. 44-913 *et seq.* (Furse 1993). We reverse and remand with directions.

In the fall of 1997, four water heaters were installed in the Graham County Courthouse by Elliott Plumbing, Heating, Air Conditioning, and Electrical, Inc. (Elliott Plumbing). The parties agree the water heaters are used to provide comfort heat in the courthouse. The parties also agree that sometime between 1997 and 2004, the four water heaters were configured into a single unit in which water is circulated and returned to the heaters.

From 1999 through 2003, the unit was inspected and approved by the County's insurance carriers as allowed under the KBSA. But after an inspection in July 2004, the KDL informed the County that because the heaters were being used to provide comfort heat

in the courthouse, the water heaters, as configured, were subjected to the requirements of the KBSA, which the unit did not meet.

The inspector also noted that previous agreements between the County and the KDL regarding replacing the heaters had not occurred and gave the County 90 days to replace the unit. About a year later, the County requested additional time to raise money to replace the unit. KDL gave the County a temporary variance, but the County continued to request a permanent variance from the KDL.

Eventually, the matter was scheduled for a telephone conference with a KDL hearing officer. The KDL officer dismissed the County's request for a variance, finding the KDL lacked subject matter jurisdiction because the water heaters were not boilers as defined in the KBSA.

KDL timely sought review of the officer's order by the Secretary of the KDL. The Secretary reversed the KDL officer's order and ruled the KDL had jurisdiction to consider the County's request for a variance.

The Secretary also found that while the water heaters were used individually for the purpose of heating water for external, potable use, they would not be subjected to regulation under the KBSA. But the current configuration of the four water heaters tied together for the sole purpose of providing comfort heat in the courthouse, transformed the configured unit into a boiler, bringing the unit under KBSA regulation.

Further, the Secretary found the configured unit was not in compliance with the KBSA; granted the County a variance for about 6 months; and required the configured unit to be replaced before the expiration of the variance.

The County filed a petition for review with the trial court, seeking reversal of the Secretary's final order. The trial court did reverse the Secretary, finding the water heaters as configured were not boilers under the KBSA and further found the KDL lacked subject matter jurisdiction over the water heaters as configured.

The trial court specifically found that the water heaters as configured did not heat water under pressure or vacuum which was

required to meet the statutory definition of a boiler under the KBSA.

KDL has timely appealed the trial court's rulings.

The parties' positions may be simply stated as thus: KDL contends that when the County connected four water heaters for the purpose of providing comfort heat in the courthouse as opposed to providing potable water for use in the courthouse, it converted the water heaters into a hot water heating boiler, thus giving the KDL jurisdiction to regulate the situation.

The County, on the other hand, contends the water heaters remain water heaters despite their configuration and despite the purpose for which they were being used—thus depriving the KDL of jurisdiction over the situation.

In reviewing a trial court's decision reviewing an administrative agency action, we first determine whether the trial court followed the requirements and restrictions placed upon it, and then we undertake the same review of the agency's action as does the trial court. *Jones v. Kansas State University*, 279 Kan. 128, 139, 106 P.3d 10 (2005).

And while statutory interpretation is a question of law, special rules apply when we review an agency's interpretation or application of a law which it is charged with administering. See *Coma Corporation v. Kansas Dept. of Labor*, 283 Kan. 625, 629, 154 P.3d 1080 (2007).

Accordingly, the doctrine of operative construction of a statute

"provides that the interpretation of a statute by an administrative agency charged with the responsibility of enforcing the statute is entitled to judicial deference. If there is a rational basis for the agency's interpretation, it should be upheld on judicial review. If, however, the reviewing court finds that the administrative agency's interpretation is erroneous as a matter of law, the court should take corrective steps. The determination of an administrative agency as to questions of law is not conclusive and, while persuasive, is not binding on the courts. [Citation omitted.]" *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 70, 150 P.3d 892 (2007).

Here, the parties acknowledge this case revolves around a disagreement over the definition of a boiler under the KBSA and

whether the configured unit used in the county courthouse constitutes a boiler.

The KBSA regulates "all boilers in this state." K.S.A. 44-913 (Furse 1993). The KBSA defines "boiler" as

"a closed vessel in which water or other liquid is heated, steam or vapor is generated or steam is superheated, or in which any combination of these functions is accomplished, under pressure or vacuum, for use external to itself, by the direct application of energy from the combustion of fuels or electric, solar or nuclear energy. The term boiler shall include fired units for heating or vaporizing liquids other than water where these units are separate from processing systems and are complete within themselves." K.S.A. 44-914(a) (Furse 1993).

Further, the KBSA specifically states the act does not apply to

"hot water supply boilers which are directly fired with oil, gas or electricity and are equipped with safety relief valves approved by the national board of the American society of mechanical engineers, if none of the following limitations is exceeded:
(A) Heat input of two hundred thousand (200,000) BTU per hour,
(B) water temperature of two hundred degrees (200) Fahrenheit, and
(C) nominal water capacity of one hundred twenty (120) gallons." K.S.A. 44-915(a)(5) (Furse 1993).

Additionally, the KBSA authorizes the Secretary to adopt rules and regulations regarding the inspection and certification of boilers in Kansas. K.S.A. 44-916 (Furse 1993). Those rules and regulations are found in Article 45, Chapter 49 of the Kansas Administrative Regulations and adopt the definition developed by the American Society of Mechanical Engineers (ASME) and the National Board of Boiler and Pressure Vessel Manufacturers. See K.A.R. 49-45-1 to 9 (1997); K.A.R. 49-45-20 (1997).

Administrative regulations have the force and effect of statutes and will be construed to operate prospectively unless a contrary intent is clearly indicated. See *Jones v. The Grain Club*, 227 Kan. 148, 150, 605 P.2d 142 (1980).

In the regulations, a hot water *supply* boiler is defined as a "boiler completely filled with water that furnishes hot water, to be used externally, at pressures not exceeding 160 psig [pounds per square inch, gauge] or at temperatures not exceeding 250F (120C) at or near the boiler outlet." K.A.R. 49-45a-4 (1997). This is the

same definition as found in the ASME Boiler and Pressure Vessel Code, § IV, Appendix E, p. 187 (1986).

On the other hand, a hot water *heating* boiler is defined as a "boiler in which no steam is generated, from which hot water is circulated for heating purposes and then returned to the boiler, and which operates at a pressure not exceeding 160 psig or a temperature of 250F (120C) or near the boiler outlet." K.A.R. 49-45a-3 (1997). This refers to delivery of comfort heat and is the same definition as provided in the ASME Code, § IV, Appendix E, p. 187 (1986).

And finally, the ASME Code defines a water heater as a "closed vessel in which water is heated and withdrawn for use external to the system at pressures not exceeding 160 psig and temperatures not exceeding 210F." ASME Code, § IV, Part HWL, p. 139.

In the present case, the trial court held in favor of the County because the configured unit did not heat water under pressure or vacuum as required definitionally by the KBSA. We can find no evidentiary support for that holding in the record on appeal.

In fact, the only evidence in the record is an affidavit from Sheldon Elliott, the owner of Elliott Plumbing, which states the heaters are 199,000 BTU units, that the normal procedure is for the courthouse to use only two heaters at a time unless the outside temperatures are extremely low, and that the unit was set for 8 pounds of pressure and the emergency values were set at 30 pounds of pressure.

Since there is no evidence in the record to support the trial court's finding the Secretary erroneously applied the law, it follows that the trial court erred by granting the County relief under K.S.A. 77-621.

The Secretary's decision was not erroneous. Under the definitions set forth in the KBSA, the administrative regulations, and the ASME, the Secretary properly determined the configured unit in the Graham County Courthouse was a boiler.

Here, the hot water produced in the configured unit is not used externally—it is circulated among the network of water heaters. The County acknowledges the configured unit is used solely to provide comfort heat for the courthouse. The hot water produced

is not used externally to the system and, thus, the configured unit is not eligible for exemption from the KBSA as a hot water supply boiler. See K.S.A. 44-915(a)(5) (Furse 1993) and K.A.R. 49-45a-4 (1997).

Here, the configured unit is a hot water heating boiler as determined by the Secretary. The hot water produced is circulated for heating purposes and returned to the boiler. See K.A.R. 49-45a-3 (1997). And the parties agree the hot water in the configured unit is used solely for comfort heating purposes.

In other words, the configured unit in the present case does not fall under the statutory and regulatory definition of a water heater because it does not provide potable water external to itself and because the KBSA, the regulations, and the ASME Code clearly distinguished between water heaters used for space heating/providing comfort heating—hot water heating boilers—and water heaters used to supply potable water—hot water supply boilers.

We hold there is a rational basis here for the Secretary's interpretation of the statutes and regulations. Under the doctrine of operative construction, we therefore uphold the Secretary's interpretation of the statutory and regulatory scheme here involved. See *Winnebago Tribe*, 283 Kan. at 70.

Further, by passing the KBSA and promulgating the regulations, the legislature and the Secretary both intended to protect public safety. See *Leroy v. Hartford Steam Boiler Inspec. and Ins. Co.*, 695 F. Supp. 1120, 1132 (D. Kan. 1988).

The legislature has clothed the KDL with discretion in enforcing the statutory scheme. See K.S.A. 44-917(a) (Furse 1993). Given the complexities in this area, it is hardly surprising the legislature has authorized the KDL to use its discretion in carrying out the statutory purpose of the KBSA. See *Blue Cross & Blue Shield of Kansas, Inc. v. Praeger*, 276 Kan. 232, 277-78, 75 P.3d 226 (2003).

The County also argues the KDL should be prevented from requiring it to replace the configured unit because the KDL previously approved the use of the configured unit. The County contends the configured unit of water heaters has been used solely to provide comfort heat to the courthouse since 1997.

But the County has not argued to this or any other court that previous actions of the KDL prevent the KDL from now requiring compliance with the KBSA. In an appeal from a decision by an administrative agency, a party is limited to the issues raised at the administrative hearing. *In re Tax Appeal of Panhandle Eastern Pipe Line Co.*, 272 Kan. 1211, 1235, 39 P.3d 21 (2002). There is nothing in the record to show the County made this argument at the administrative hearing.

Finally, a rebuttable presumption of validity attaches to the actions of an administrative agency, and the burden of establishing arbitrary and capricious conduct lies with the party challenging the agency action. See *Jones*, 279 Kan. at 140.

Here, the County has not shown how the KDL's actions were arbitrary and capricious.

Reversed and remanded with directions to reinstate the order of the Secretary of KDL.