No. 56,643

Carol Bonewell, *Appellant*, v. The City of Derby, Kansas, and The Derby Jaycees, Inc., *Appellees.*

(693 P.2d 1179)

Opinion filed January 26, 1984.

*Stephen B. Plummer,* of Rumsey, Richey & Plummer, of Wichita, argued the cause and was on the brief for appellant Carol Bonewell.

*Bruce A. Swenson,* city attorney, argued the cause, and *Daniel C. Bachmann,* of Wichita, was on the brief for appellee City of Derby, Kansas.

*Eric E. Davis,* of McDonald, Tinker, Skaer, Quinn & Herrington, of Wichita, argued the cause, and *Alvin D. Herrington,* of the same firm, was with him on the brief for appellee The Derby Jaycees, Inc.

The opinion of the court was delivered by

Miller, J.: Plaintiff, Carol Bonewell, broke her leg while sliding into home plate during a softball game at Riley Field, in Derby, Kansas. She brought this action against the City of Derby and the Derby Jaycees, Inc. (hereafter, the Jaycees), for damages which she claims she sustained because of their negligence in the maintenance of the ballfield. The trial court sustained motions of the defendants for summary judgment, and plaintiff appeals.

Riley Field is a part of Riley Park, a public park owned and maintained by the City of Derby. Since 1976, the Derby Jaycees have administered the softball leagues, which play their games on Riley Field, under a rather loose arrangement with the City Park Board. The November 22, 1976, minutes of that Board merely state that "Meidinger [a member of the Board] reported

that Jaycees have agreed to manage" the men's softball league. This is apparently the only written entry concerning the matter. The Jaycees thereafter organized the leagues for both men and women, scheduled the games, collected entry fees from the teams and fees for signboard advertising, selected the umpires and paid them if they did not volunteer their services, and ran the softball program in an administrative capacity. The fees collected were used to pay umpires and to improve the field. The public was admitted to watch the games without charge. The concession stand at the park was operated by another person under contract with the city, and the Jaycees had nothing to do with that. The City was responsible for the maintenance of Riley Field, including watering the outfield, mowing it, dragging the infield, and maintaining the stands and the lights. At the start of each season, home plate and the pitcher's rubber, together with anchors for the bases, were set in place by a joint effort between the City and the Jaycees. During the season, the bases (first, second and third) were removed after each evening's play and were kept in a storage shed. The pitcher's rubber and home plate, however, remained in place throughout the season. The bases, home plate, the pitcher's rubber, the storage shed, and all equipment were the property of the City. If a base was damaged during play, the umpire could call for a replacement, and one would be brought in from the storage shed and installed. The Jaycees bought new bases as needed, and were reimbursed by the City. Plaintiff's injury was sustained during a regularly scheduled softball game on June 4, 1980.

Those provisions of the Kansas Tort Claims Act which are relevant to this proceeding are stated in K.S.A. 1980 Supp. as follows:

"75-6102. **Definitions.** As used in K.S.A. 1979 Supp. 75-6101 to 75-6116, inclusive, unless the context clearly requires otherwise, the following words and phrases shall have the meanings respectively ascribed to them herein:

"(a) 'State' means the state of Kansas or any office, department, agency, authority, bureau, commission, board, institution, hospital, college, university or other instrumentality thereof.

"(b) 'Municipality' means any county, township, city, school district or other political or taxing subdivision of the state.

"(c) 'Governmental entity' means and includes state and municipality as hereinbefore defined.

"(d) 'Employee' means any officer, employee or servant or any member of a board, commission or council of a governmental entity, including elected or

appointed officials and *persons acting on behalf or in service of a governmental entity in any official capacity, whether with or without compensation,* but such term shall not include an independent contractor under contract with a governmental entity. The term 'employee' shall include former employees for acts and omissions within the scope of their employment during their former employment with the governmental entity. (Emphasis supplied.)

"75-6103. **Liability for damages of governmental entities for employee acts or omissions, when; applicable procedure.** (a) Subject to the limitations of this act, each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state.

"(b)(1) Except as otherwise provided in this act, either the code of civil procedure or, subject to provision (2) of this subsection, the code of civil procedure for limited actions shall be applicable to actions within the scope of this act. Actions for claims within the scope of the Kansas tort claims act brought under the code of civil procedure for limited actions are subject to the limitations provided in K.S.A. 1980 Supp. 61-1603.

"(2) Actions within the scope of the Kansas tort claims act may not be brought under the small claims procedure act.

"75-6104. **Same; exceptions from liability.** A governmental entity or an employee acting within the scope of his or her employment shall not be liable for damages resulting from:

. . . .

"(n) any claim for injuries resulting from the use of any public property intended or permitted to be used as a park, playground or open area for recreational purposes, unless the governmental entity or an employee thereof is guilty of gross and wanton negligence proximately causing such injury . . . ."

75-6102 and -6104 have since been amended, but the amendments do not change materially the language here involved.

The trial court held that Riley Field is a public park intended, permitted and in fact used for recreational purposes within the meaning of 75-6104(n); that the City of Derby is a municipality and governmental entity within the meaning of 75-6102(b) and (c); and that the Derby Jaycees, Inc., was at all times and for the purposes of this case an employee of the City, acting within the scope of its employment, within the meaning of 75-6102(d) and -6104. The court then concluded that both the City and the Jaycees were immune from tort liability pursuant to 75-6104(n). It sustained the motions for summary judgment of both defendants.

Plaintiff contends that the trial court erred in sustaining the motions for summary judgment for two reasons. First, plaintiff claims that Riley Field is not a "public property intended or

permitted to be used as a park, playground or open area for recreational purposes." Second, it contends that Derby Jaycees, Inc., was not an employee of the City under the definition included within 75-6102(d).

We look first to the character of Riley Field. It is owned by the City, and is within the confines of Riley Park, a public park. The Field's use for softball games is obviously a recreational purpose. Plaintiff argues, however, that the public is excluded from the field while games are in progress; that the field may then be used only by those persons playing on the league teams; and that the field thus loses its public character and becomes semi-private. This is too restrictive a view. The public finds recreation by watching the games, and members of the public who are on the teams participate in the recreational activity. The same argument could be made as to public tennis courts, to which some members of the public are denied access while others play tennis thereon, or to shelter houses in public parks, to which some members of the public are denied access while others, having made previous arrangements, hold family picnics or reunions therein. The ball diamond in Riley Park was obviously built with the intent that it be used by the public as a ball field, which is a recreational purpose. We find no merit to this argument.

Plaintiff also argues that the exception provided by 75-6104(n) should be construed to apply only to injuries resulting from natural conditions of public property, and that here injuries occurred due to a dangerous artificial condition that existed, a defective home plate. In support of this contention, she relies upon *Coleman v. Edison Tp.*, 95 N.J. Super. 600, 232 A.2d 187 (1967). That case is factually similar to this one. The New Jersey court found that Coleman had not been injured by the use of any public grounds, but instead had been injured because of defective equipment brought to the park—a defective home plate. However persuasive the New Jersey court's reasoning may be, we think the issue was resolved in our case of *Willard v. City of Kansas City*, 235 Kan. 655, 681 P.2d 1067 (1984). Willard sought damages for injuries sustained when he collided with a chain link fence around a baseball field in a Kansas City park. The trial court granted summary judgment, holding the City immune from liability under 75-6104(n). We affirmed, holding that, in the absence of evidence establishing gross and wanton conduct, the

City was immune from liability. Regardless of what causes an injury sustained in a public park, a claimant in this state must offer evidence of gross and wanton negligence; mere negligence on the part of a governmental entity is not sufficient to establish a compensable claim under the statute. We do not recognize the artificial condition or equipment exception which forms the basis of the New Jersey court's opinion in *Coleman*. The trial court was correct in sustaining the City's motion for summary judgment.

Finally, we turn to the claim that the Jaycees were not employees of the City—or the Jaycee Corporation was not an employee of the City—within the definition of 75-6102(d). The Jaycees did not have a lease; they were not granted the exclusive use of any property; they did not have a concession; they were not responsible for the maintenance or upkeep of the field. The City retained actual control over the care and maintenance of the area. The Jaycees simply scheduled softball games during the summer months and, in fact, organized the recreational use of Riley Field. We have carefully considered the cases cited by plaintiff, *Warren v. City of Topeka*, 125 Kan. 524, 265 Pac. 78 (1928); *Gage v. City of Topeka*, 205 Kan. 143, 468 P.2d 232 (1970), and other authorities cited. An extended discussion of those cases would not be helpful to the plaintiff's cause or aid in the understanding of our opinion here. We find the cases supportive of the trial court's ruling, not the plaintiff's theory.

The statute now before us, 75-6102(d), provides us with a broad definition of "employee." It includes persons acting on behalf or in service of a governmental entity in any official capacity, whether with or without compensation. The only exclusion from the definition is that of an independent contractor, and clearly the Jaycees do not fall within that exception. The Jaycees were simply assisting the City in carrying out the public purposes for which Riley Field was built and maintained. The Jaycees, in our opinion, clearly fall within the statutory definition of "employee." We conclude that the trial court was correct in so holding.

The judgment of the district court is affirmed.

PRAGER, J., concurring.