No. 71,491

ENID DYANN MITZNER and CRYSTAL MITZNER, by and through her guardian ad litem PATRICK S. BISHOP, *Appellees*, v. THE STATE OF KANSAS, KANSAS DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES, and PHILLIP JAMISON and SHIRLEY JAMISON, *Appellants*.

(891 P.2d 435)

Opinion filed March 10, 1995.

· *Daniel F. Meara*, of Fort Scott, argued the cause and was on the brief for appellants.

*Michael George,* associate general counsel, of Kansas Department of Social and Rehabilitation Services, argued the cause, and *Richard Shaw,* of the same department, was with him on the brief for appellees.

The opinion of the court was delivered by

McFARLAND, J.: This is a personal injury action wherein damages are sought from the Kansas Department of Social and Rehabilitation Services (SRS) for injuries received by a minor child during her placement in foster care. Summary judgment was entered by the district court in favor of SRS, and plaintiffs appeal therefrom.

The uncontroverted facts may be summarized as follows:

On December 1, 1986, defendants Shirley and Phillip Jamison submitted an application to the Kansas Department of Health and Environment for a license to conduct a family foster home. The application was investigated by an employee of SRS, and upon completion of the investigation the Jamisons were issued a license on December 15, 1986, by the Department of Health and Environment to operate a family foster home.

In July of 1987, the Jamisons received their first foster child, Mary Kastl. On August 21, 1987, pursuant to a district court protective custody order, SRS received custody of the four children of Enid DyAnn Mitzner and Larry Mitzner. All four children were temporarily placed in the Jamison foster home that same day. Several days later, the two older Mitzner children were removed from the Jamison home and placed with a different foster family, but the two youngest children, Crystal and Henry Mitzner, remained in the Jamisons' care until October 16, 1987. In October of 1987, the Jamisons had three foster children residing with them: Mary Kastl, 16 years old; Crystal Mitzner, 2 years old; and Henry Mitzner, 9 months old.

On the afternoon of October 15, 1987, Mary Kastl was cleaning the bathroom in the Jamison home. Crystal Mitzner was also in the bathroom sitting on a potty chair. Mary was cleaning the toilet bowl with Sno Bol, an over-the-counter bathroom cleaner. The telephone rang, and Mary placed the bottle of Sno Bol on the ledge behind the toilet and went into the hall to answer the phone. When Mary returned to the bathroom very shortly there-

after, she discovered Crystal holding the Sno Bol. It appeared to Mary that Crystal had drunk some of the Sno Bol, because the liquid was running down Crystal's chin. Mary then took Crystal into the kitchen and gave Crystal a drink of water and some milk. Phillip Jamison then entered the house, and Crystal was taken to the hospital. As a result of this incident, Crystal suffered severe permanent injuries to her mouth, throat, esophagus, trachea, and lungs.

On October 13, 1989, Enid DyAnn Mitzner, Crystal Mitzner's natural mother, and Crystal Mitzner, by and through her guardian ad litem, Patrick S. Bishop, filed suit against the Jamisons and SRS. Summary judgment was entered in favor of SRS on April 1, 1991. The basis for that determination was the district court's determination that the Jamisons were independent contractors rather than employees of SRS. On February 15, 1994, on a friendly suit basis, judgment was entered against the Jamisons for $1,250,000. Thereafter, the plaintiffs duly appealed from the earlier entry of summary judgment on behalf of SRS.

The single issue herein is whether the district court erred in holding that the foster parents (the Jamisons) were independent contractors with SRS. No claim is made herein seeking liability against SRS on any basis other than vicarious liability through the alleged employer-employee relationship with the Jamisons.

The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn

from the evidence, summary judgment must be denied. *Kerns v. G.A.C., Inc.*, 255 Kan. 264, 268, 875 P.2d 949 (1994); *Hurlbut v. Conoco, Inc.*, 253 Kan. 515, 519-20, 856 P.2d 1313 (1993).

In *Falls v. Scott*, 249 Kan. 54, 815 P.2d 1104 (1991), we defined an independent contractor and stated how the determination is to be made. We held:

"An independent contractor is defined as one who, in exercising an independent employment, contracts to do certain work according to his own methods, without being subject to the control of his employer, except as to the results or product of his work. The primary test used by the courts in determining whether the employer-employee relationship exists is whether the employer has the right of control and supervision over the work of the alleged employee, and the right to direct the manner in which the work is to be performed, as well as the result which is to be accomplished. It is not the actual interference or exercise of the control by the employer, but the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor. *Wallis v. Secretary of Kans. Dept. of Human Resources*, 236 Kan. 97, Syl. ¶¶ 3, 5, 689 P.2d 787 (1984).

"Where the facts are undisputed or the evidence is susceptible of only a single conclusion, it is a question of law for the court whether one is an employee or an independent contractor. However, generally speaking, the question of whether an individual is an employee or an independent contractor is considered a question of fact for the jury or trier of facts. *Baker v. Petroleum Co.*, 111 Kan. 555, 561, 207 Pac. 789 (1922); 41 Am. Jur. 2d, Independent Contractors § 53." 249 Kan. at 64.

In the case before us, no material facts are in dispute as to how and when the Jamisons became foster parents, SRS's role in supervising foster care homes and in placing children therein, the rules and guidelines under which the foster care program operates, or as to how the tragic accident giving rise to this case occurred. The question then before the district court was, under these undisputed facts, what was the legal relationship between the foster parents and SRS. The district court held the foster parents to be independent contractors.

Ordinarily an employer is not held to be vicariously liable for the negligence of an independent contractor it hires. There is no claim herein that the facts of this case come within any exception to this general rule. Further, under the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.*, an independent contractor is not a state

employee. K.S.A. 1994 Supp. 75-6102(d). Thus, the finding of an independent contractor relationship entitled SRS to summary judgment in its favor as it was fatal to plaintiffs' claim against SRS.

The plaintiffs contend the undisputed facts herein establish an employer-employee relationship and the district court erred in holding the foster parents to be independent contractors. We do not agree.

The plaintiffs rely heavily on *Crawford v. Kansas Dept. of Human Resources*, 17 Kan. App. 2d 707, 845 P.2d 703 (1989), *rev. denied* 246 Kan. 766 (1990). At issue in *Crawford* was the propriety of the appellee agency's determination that certain individuals were employees of the appellant rather than independent contractors and the agency's assessment of unemployment contributions against the appellant. Twenty factors had been developed and utilized by the appellee agency in making such determinations. The plaintiffs herein use much of their brief to state and apply those 20 factors to the facts herein. Little would be gained from including and analyzing each of these factors in the context of this issue herein. It is sufficient to say that plaintiffs contend that the amount of control exercised by SRS over the foster parents herein through the foster parent training required by SRS, its Foster Parent Handbook, its supervisory and placement powers, and its $6.22 per day payment for child care established an employer-employee relationship rather than an independent contractor relationship.

We find no merit in this argument.

One of the difficulties in discussing this case is the posture of the issue before us—is a foster parent an employee or an independent contractor? The foster parent's actual status is rather unique and does not actually fit within either term. A more apt description of a foster parent would be more of an expense-reimbursed volunteer who must be licensed and who operates within certain guidelines. The $6.22 per day paid by SRS is considered reimbursement only and is not taxable income or even reportable income to its recipients. The foster parents are, therefore, not paid for their services, yet licensing is required. How-

ever, as the issue comes to us on the basis of employee vs. independent contractor, we will accept such designation, as it is sufficient for resolution of the issue.

Let us look more closely at what the foster care system is and is not. The foster care system is an alternative to the placement of minor children in state-operated institutions, staffed by state employees. Through the foster care program, children are placed in existing family units where, hopefully, the home structure will provide good care in a family based, noninstitutional setting. The amount of reimbursement to the foster parents is minimal. Within the broad guidelines established by SRS, the foster child is a member of the family even if his or her stay will be very temporary. We conclude an individual does not become a state employee by becoming a licensed foster parent. Limiting our choice of status to employee or independent contractor, the latter is the appropriate categorization of a foster parent.

This conclusion is consistent with the results reached in many other jurisdictions. The following three cases are illustrative thereof.

In *Simmons v. Robinson*, 305 S.C. 428, 409 S.E.2d 381 (1991), a foster child was injured in an automobile accident and charged the foster mother with negligence. A South Carolina appeals court determined that the duties of the Department of Social Services were "nondelegable" and thus imposed vicarious liability upon the agency for the alleged negligence of the foster mother. *Simmons v. Robinson*, 303 S.C. 201, 213, 399 S.E.2d 605 (Ct. App. 1991). In reversing the appellate court's judgment, the South Carolina Supreme Court held that the foster mother was not an employee of the State merely because she was a foster parent. The court found that the foster mother was a licensee and not an employee or independent contractor, and, therefore, her negligent conduct could not be imputed to the State. 305 S.C. at 431.

In *Kern v. Steele County*, 322 N.W.2d 187 (Minn. 1982), a foster child was injured while in the Kerns' care, and her mother brought suit against them. The Kerns then brought a declaratory judgment action seeking a determination that they were employees of Steele County within the meaning of an insurance policy

covering Steele County and "any employee." The trial court so found, and the liability insurer of Steele County appealed. The Minnesota Supreme Court considered five factors in determining the existence of an employment relationship: "(1) The right of the employer to control the manner and means of performance of the work; (2) [t]he mode of payment; (3) [f]urnishing of materials or tools; (4) [c]ontrol of the premises where the work is to be performed; and (5) [r]ight of discharge." 322 N.W.2d at 189. Each of these considerations, except the right of discharge, indicated that an employment relationship did not exist, and the court concluded that the right of discharge alone could not overcome the weight of the other factors. The court, therefore, held that "the Kerns, in their capacity as foster parents, were not employees of Steele County." 322 N.W.2d at 189.

In *New Jersey Property-Liability Ins. Guar. v. State*, 195 N.J. Super. 4, 477 A.2d 826 (1984), a foster child's natural parents brought an action against the New Jersey Division of Youth and Family Services (DYFS) and its approved foster parents for personal injuries suffered by their child while in foster placement. The foster parents filed a separate declaratory relief action to obligate the State to assume their defense. The action was based on a New Jersey statute which required the Attorney General to defend any state employee sued for an act or omission occurring in the course of employment. After reviewing statutes governing child placement and the appropriate provisions of the New Jersey Tort Claims Act, the court found that the circumstances involving DYFS child placement "do not denote a degree of control by DYFS over foster parents sufficient to confer employee status . . . ." 19 N.J. Super at 13. Since foster parents were not state employees, the State was not required to defend and indemnify them against personal injury claims. 195 N.J. Super at 16.

The New Jersey court added another, and compelling, reason to find that foster parents are not employees of the State:

"Moreover, we cannot conceive that our Legislature intended that foster parents be State employees within the purview of the New Jersey Tort Claims Act. A legal theory conferring employee status on foster parents would not only ren-

der the State liable for injuries suffered by foster children while in the care of foster parents, but also would expose the State to liability for injuries suffered by third parties as a result of the foster parents' torts. To adopt such a theory would place an intolerable burden upon the State and might well diminish the beneficial effects of the foster parent program and compel a return to institutional care as the sole means of addressing the plight of abused and neglected children." 195 N.J. Super. at 16.

We find no error in the district court's determinations that: (1) the foster parents were independent contractors rather than employees of SRS; (2) SRS had no vicarious liability for the negligence of the foster parents; and (3) SRS was entitled to summary judgment on the plaintiffs' claims against it.

The judgment is affirmed.