The Honorable Tim Emert State Senator, 15th District State Capitol, Room 356-E Topeka, Kansas 66612
Dear Senator Emert:
You request our opinion concerning whether the Kansas Tort Claims Act (Act) applies to volunteers for the Kansas Guardianship Program (KGP) and whether the immunity provided by K.S.A. 60-3601 is available for KGP volunteers.
K.S.A. 75-6103(a) provides that each governmental entity shall be liable for the negligent or wrongful acts or omissions of its employees acting within the scope of their employment under the same circumstances that a private person would be liable. The Kansas Guardianship Program is a public instrumentality that recruits and trains volunteers to serve as guardians and conservators for adults who have been found by the court to need such protection. K.S.A. 1996 Supp. 74-9602,74-9603. In Attorney General Opinion No. 96-10 we concluded that the Kansas Guardianship Program is a governmental entity for purposes of the Act. We now address whether KGP volunteers are employees under the Act. If so, the KGP may be liable for any negligent or wrongful acts which arise within the scope of those volunteers' employment.
"Employee" is defined in the act as any person "acting on behalf of or in the service of a governmental entity, in any official capacity, whether with or without compensation," however it does not include an independent contractor. K.S.A. 1996 Supp. 75-6102(d),Bonewell v. City of Derby, 236 Kan. 589 (1985), Mitznerv. State Department of SRS, 257 Kan. 258 (1995). An independent contractor is a person who, in exercising an independent employment, contracts to do certain work according to his or her own methods, without being subject to the control of his employer, except as to the results or product of the work. Griffith v. Mt. CarmelMedical Center, 809 F. Supp. 839 (D.Kan. 1992). The primary test used by the courts in determining whether the employer-employee relationship exists is whether the employer has the right of control and supervision over the work of the alleged employee, and the right to direct the manner in which the work is to be performed, as well as the result to be accomplished. It is not the actual interference or exercise of control of the employer, but the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor. Griffiths, supra. There is no absolute rule for determining whether an individual is acting as an employee or an independent contractor; the determination is made on a case-by-case basis taking all the circumstances into consideration.Wallis v. Secretary of the Kansas Department of HumanResources, 236 Kan. 97, 102 (1984).
The KGP recruits and screens individuals to serve as guardians and conservators. A guardian is an individual appointed by a court who has the care and custody of a ward and acts on behalf of the ward. K.S.A. 1996 Supp.59-3002(d), K.S.A. 59-3018(b). A conservator is an individual appointed by a court who manages the estate of a conservatee and acts on the conservatee's behalf. K.S.A. 1996 Supp. 59-3002(f), K.S.A. 59-3019. Once the court appoints the volunteer to serve as a guardian or conservator, the volunteer signs an agreement with the KGP to maintain contact with the ward/conservatee, participate in training opportunities offered by the KGP, file monthly reports of services rendered to the ward/conservatee and, finally, file with the KGP a copy of the annual/final guardian's report or conservator's account that is filed with the court under the requirements of the Probate Code. In return, the KGP pays a stipend of $20 per month which is designed to reimburse the volunteer for out-of-pocket expenses incurred such as mileage, photocopies, postage and long distance phone calls. Guardians and conservators are subject to the control and direction of the court, and their duties and powers are prescribed in the Probate Code. K.S.A. 59-3018, 59-3019. Termination of a guardianship or conservatorship is accomplished only by the court, so if the volunteer chooses to terminate his or her relationship with the KGP, it will not relieve the volunteer from the duty to account to the court. K.S.A. 59-3028.
Our understanding is that once a volunteer is accepted by the KGP, he or she receives training which emphasizes that guardians or conservators are subject to the control and direction of the court and are accountable to the court for actions undertaken on behalf of the ward/conservatee. Moreover, the training manual used by the KGP provides that volunteers are not KGP employees and are not supervised by the KGP staff.
One of the tenets of an employer-employee relationship is that the employer has the right to control and supervise the work of the alleged employee. By statute, a guardian and a conservator are subject to the control and direction of the court, not the KGP. K.S.A.59-3018. In Mitzner v. State Department of SRS,257 Kan. 258 (1995), the Kansas Supreme Court addressed the issue of whether a foster parent is an independent contractor or an employee of the Department of Social and Rehabilitation Services (SRS) for purposes of determining whether SRS was liable for the negligence of the foster parent. The court concluded that a foster parent is an expense-reimbursed volunteer who is licensed and who operates within certain SRS guidelines and, therefore, is an independent contractor and not an employee of SRS.
We believe that the Mitzner rationale applies to the situation here and, therefore, it is our opinion that a KGP volunteer is an independent contractor and not an employee as defined by the Kansas Tort Claims Act. Before leaving this issue, we mention the case ofBonewell v. City of Derby, supra, because it addresses the definition of an employee for purposes of the Kansas Tort Claims Act. In Bonewell, supra, the plaintiff broke her leg while playing softball on a city field. She sued both the city and the Jaycees because of their negligence in maintaining the ball field. The court examined whether the Derby Jaycees were employees for purposes of the Kansas Tort Claims Act. The Jaycees administered the softball leagues under a "loose" arrangement with the city whereby the Jaycees organized the leagues, scheduled the games, collected entry fees, selected the umpires and ran the program. The city retained actual control over the care and maintenance of the softball field. The court concluded that the Jaycees were persons acting on behalf of or in the service of the city and were not independent contractors because they "merely were assisting the city in carrying out the public purpose for which the field was built and maintained." Rather than engaging in an analysis of the distinction between an employee and an independent contractor, the court summarily decided that the Jaycees did not fall into the independent contractor exception. We do not find Bonwell to be controlling in this instance.
Finally, you inquire whether the immunity provided by K.S.A. 60-3601 is available to KGP volunteers. K.S.A.60-3601 provides limited immunity for volunteers of nonprofit organizations that are exempt from federal income tax pursuant to section 501(c) of the Internal Revenue Code (Code). You indicate that the Kansas Guardianship Program is not exempt from federal income tax pursuant to section 501(c) of the Code and, therefore, KGP volunteers cannot avail themselves of this protection.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Mary Feighny Assistant Attorney General
CJS:JLM:MF:jm