**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-2019**

CORNETT MANAGEMENT COMPANY, LLC, a foreign corporation,

Plaintiff - Appellant,

v.

FIREMAN'S FUND INSURANCE COMPANY, a foreign corporation;
BRADY RISK MANAGEMENT, INCORPORATED,

Defendants - Appellees,

and

LEXINGTON INSURANCE COMPANY, a foreign corporation; HARTAN
BROKERAGE, INCORPORATED,

Defendants.

Appeal from the United States District Court for the Northern
District of West Virginia, at Wheeling.  Frederick P. Stamp,
Jr., Senior District Judge.  (5:04-cv-00022)

Argued: May 14, 2009              Decided: June 22, 2009

Before NIEMEYER, MOTZ, and TRAXLER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Brent Karleton Kesner, KESNER, KESNER & BRAMBLE,
Charleston, West Virginia, for Appellant.  James William
Marshall, III, BAILEY & WYANT, PLLC, Charleston, West Virginia;
Melvin F. O'Brien, DICKIE, MCCAMEY & CHILCOTE, Wheeling, West

Virginia, for Appellees. **ON BRIEF:** Ellen R. Archibald, KESNER, KESNER & BRAMBLE, Charleston, West Virginia, for Appellant. Robert P. Martin, Billie Jo Streyle, BAILEY & WYANT, PLLC, Charleston, West Virginia, for Appellee Fireman's Fund Insurance Company; Melissa M. Barr, DICKIE, MCCAMEY & CHILCOTE, Wheeling, West Virginia, for Appellee Brady Risk Management, Incorporated.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this insurance coverage dispute, Cornett Management Company, LLC (Cornett) appeals the district court's grant of summary judgment to Fireman's Fund Insurance Company (Fireman's Fund) finding Cornett not entitled to coverage. We affirm.

I.

Cornett, a Richmond-based company, owns a number of restaurants including a Hooters franchise in Charleston, West Virginia. Two female Hooters employees filed suit alleging that a Cornett supervisor improperly conducted a strip search of them. Cornett seeks reimbursement for settlement costs and attorneys fees arising from the lawsuit, under an insurance policy issued by Fireman's Fund.

According to the employees' complaint, in 2001 a manager at the Hooters directed two female employees, one at a time, to his office and stated that a customer had reported a stolen change purse. The manager told the women that a police officer had telephoned, and he directed each woman to listen to the instructions of the officer on the phone. A male voice then commanded the women to strip naked in front of the manager, threatening them with a humiliating arrest if they failed to comply. The female employees complied. (The telephone call was later revealed to be a crank call.)

3

As a result of this and several other incidents at the Hooters franchise, seven female employees filed a suit against Cornett and others alleging sexual harassment (the "Reynolds complaint"). The amended Reynolds complaint included a claim for false imprisonment arising from the strip searches described above.

Cornett eventually settled the Reynolds suit, and Lexington Insurance Company (Lexington) reimbursed Cornett for defense and settlement costs to the limits of its coverage. Cornett then sought additional coverage from a commercial general liability insurance contract issued to it by Fireman's Fund.

"Coverage B" of the Fireman's Fund policy covers claims arising from "personal injury," which include "[f]alse arrest, detention or imprisonment." An "Employment-Related Practices Exclusion" (ERP exclusion) attached to the policy, however, amends Coverage B, limiting coverage for personal injury. This ERP exclusion provides:

2. The following exclusion is added to COVERAGE B (Section I):

   c. **Personal injury** arising out of any:

   . . .

      (3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions."

4

(Emphasis added).

Seeking coverage under this policy, Cornett filed suit in state court against Fireman's Fund. After the case was removed to federal court, the district court granted summary judgment to Fireman's Fund, finding that the ERP exclusion applied to all claims presented in the underlying lawsuit and that therefore Cornett was not entitled to reimbursement for costs arising from that lawsuit. Cornett noted a timely appeal.[1]

## II.

We review the district court's grant of summary judgment de novo. Beard Plumbing & Heating, Inc. v. Thompson Plastics, Inc., 152 F.3d 313, 315 (4th Cir. 1998). "[S]ummary judgment is appropriate where there is no genuine dispute as to a material fact." Id. In this case, the parties agree that West Virginia law controls the interpretation of the insurance policy and that, under applicable law, "the language in an insurance policy should be given its plain, ordinary meaning." W. Va. Fire & Cas. Co. v. Stanley, 602 S.E.2d 483, 489 (W. Va. 2004) (internal quotation marks omitted).

---

[1] If we determine that the exclusion does not apply to the claims in the Reynolds suit, Fireman's Fund seeks a remand in order to conduct discovery to determine whether Cornett timely notified Fireman's Fund of its claim. Because we find that the insurance policy excludes coverage of Cornett's claim, we need not reach the late notice issue.

5

III.

Cornett argues that the ERP exclusion does not exclude coverage for the Reynolds false imprisonment claim because (1) Cornett had no practice or policy of strip searching employees and (2) the ERP exclusion is ambiguous and therefore should be construed against Fireman's Fund as the insurer. Fireman's Fund disagrees, arguing that because the manager engaged in an employment-related act when he strip searched the two women, the exclusion applies.

We can easily reject Cornett's first argument -- that the ERP exclusion applies only to employment-related practices or policies and not to acts. The exclusion specifically lists "employment-related . . . acts or omissions" in addition to "practices" and "policies." Accordingly, the plain language of the exclusion makes clear that claims arising from an employment-related act may be excluded from coverage.

Cornett's second argument demands a bit more analysis. It requires us to determine what types of acts the policy meant to exclude from coverage when it listed "[c]oercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related . . . acts." Courts, considering similar ERP exclusions, have disagreed as to how to interpret this type of provision. Compare LDF Food Group, Inc. v. Liberty Mut. Fire Ins. Co., 146

6

P.3d 1088, 1094-95 (Kan. Ct. App. 2006) (holding that the exclusion applied to facts very similar to this case) with Acuity v. N. Cent. Video, LLLP, No. 1:05-cv-010, 2007 WL 1356919, at *19 (D.N.D. May 7, 2007) (holding that the exclusion was ambiguous and thus construing it against the insurance company). Because West Virginia law controls our interpretation of the contract, we look to the West Virginia Supreme Court of Appeals for guidance.

In Bowyer v. Hi-Lad, Inc, 609 S.E.2d 895, 913 (W. Va. 2004), which involved an employer installing a security camera and microphone in a hotel lobby without informing employees, West Virginia's highest court found that an ERP exclusion[2] did not apply because "nothing in the record suggest[s] that [the insured] made it a practice, or had a policy, or engaged in, acts of humiliation. . . . [T]here is nothing to indicate that the [insured's] actions were intended to cause humiliation." Id. at 913 (emphasis added).

In so holding, the West Virginia court indicated that the ERP exclusion would apply to any claim arising from an

---

[2] The ERP exclusion in Bowyer excluded coverage for liability "arising out of any . . . [e]mployment-related practices, policies, acts or omissions, such as coercion, . . . harassment, humiliation or discrimination directed at the person." Bowyer, 609 S.E.2d at 913 (internal quotation marks omitted). For purposes of this case, we see no difference between the meaning of this exclusion and of the ERP exclusion in the Fireman's Fund policy.

7

employer's act or omission <u>intended</u> to result in coercion, harassment, humiliation, or discrimination. In the case at hand, such intention exists; the <u>Reynolds</u> complaint clearly alleges acts by a Hooters manager that involved <u>intentional</u> coercion, harassment, and humiliation of the two female employees who were strip searched. Accordingly, we believe that a West Virginia court would hold that the ERP exclusion in the Fireman's Fund policy excludes coverage for the false imprisonment claim that arose from the strip searches.

This interpretation of the ERP exclusion accords with that of a number of other courts.[3] For example, in <u>LDF Food Group v. Liberty Mut. Fire Ins. Co.</u>, 146 P.3d 1088, 1094-95 (Kan. Ct. App. 2006), the Kansas Court of Appeals determined that a nearly identical ERP exclusion barred coverage of a claim resulting from a strip search very similar to the one in this case. In so holding, the Kansas court explained that the victim of the strip search, in her lawsuit, had alleged coercive, harassing, and humiliating acts by managers, and therefore the ERP exclusion in that case excluded coverage. <u>Id.</u>; <u>see also</u> <u>Capitol Indem. Corp.</u>

---

[3] Moreover, we note that limiting the ERP exclusion to claims in which the employer <u>intends</u> to cause coercion, humiliation, or harassment, as the West Virginia court has done, prevents the exclusion from applying to all acts done by an employer or impacting an employee, a broad interpretation that has led some courts to find the provision ambiguous. <u>See, e.g.</u>, <u>Acuity</u>, 2007 WL 1356919, at *14-15, *19; <u>Peterborough Oil Co. v. Great Am. Ins. Co.</u>, 397 F. Supp. 2d 230, 238-39 (D. Mass. 2005).

<u>v. 1405 Assoc., Inc.</u>, 340 F.3d 547, 550 (8th Cir. 2003) (holding that under Missouri law, the term "arising out of" must be broadly construed thereby requiring the court to apply a broad construction to the ERP exclusion). A manager's act, like the one in this case, which intentionally humiliates, coerces, or harasses an employee, will clearly have an effect on the employment relationship. Such an act, therefore, is employment-related and, under West Virginia law, falls within the language of the ERP exclusion at issue here.

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.